## Miller *v.* The Wild Cat Gravel Road Co.

TURNPIKE.—*Subscription of Stock.*—When the articles of association of a proposed gravel road company define the sum of the capital stock, the number of the shares, and the amount of each share, and stipulate that the subscribers thereto agree to take the number of shares set opposite their names, a promise is implied that each subscriber will pay the amount specified per share, as assessed after the organization of the company as a corporation shall be perfected.

SAME.— *Complaint on Subscription.*—*Articles of Association.*— *Where and When Recorded.*—A complaint on a subscription of stock in a gravel road company, which alleges that the articles of association were recorded in a certain county named, is not defective on demurrer, because it does not

allege that said articles were recorded in the county through which the road was to pass, if an inspection of the termini and course of the road specified in the articles shows that the road was not to run elsewhere than in said county named. Nor is it ground of demurrer that such complaint alleges the articles of association to have been recorded in a certain year; if a more definite and certain time is required to be stated, a motion to make more specific is necessary.

SAME.—*Board of Directors.*—Where such complaint alleges that the calls were made by the board of directors of the company, it is not defective for not alleging that a board of directors was elected and qualified.

SAME.—*Articles of Association.*—*Names of Directors.*—The articles of association of a gravel road company, organized under the statute, 1 G. & H. 474, need not set forth the names of the directors of the company.

SAME.—*Terminus of Road.*—The terminus of a gravel road is sufficiently' defined in the articles of association, if they state that the road starts from a definitely described point and runs specified courses and distances to the end.

SAME.—*Exhibit.*—A paper containing a description and survey of a gravel road, although detached from the body of the articles of association, yet is a part thereof, if it is referred to in the articles as a certain exhibit and is expressly made a part of them and is recorded as part thereof.

SAME.—*Steps Necessary to Incorporation.*—A complaint on a subscription of stock in a gravel road company organized under the statute (1 G. & H. 474) is not objectionable for not alleging, in terms, all the steps to have been taken which were necessary to bring the corporation into existence, if it alleges that certain articles of association, which are set out by copy as containing the contract, and which contain all that is required by law, were entered into by defendant, and, also, that the necessary amount of stock has been subscribed, and that the articles have been duly filed for record.

SAME.—*Tender of Certificates of Stock.*—It is not necessary for a gravel road company to tender certificates of the stock subscribed for before suing the subscriber, when it is not expressly stipulated in the contract that the stock is to be issued on the payment of the money.

SAME.—*Board of Directors.*—*Bond of.*—Section 7, 3 Ind. Stat. 540, requires the board of directors of a gravel road company to file a bond before the receipt by the company from the county treasurer of money collected on assessments of benefits; it has no reference to collections of stock subscriptions.

SAME.—*Designation of Place of Residence of Subscriber to Articles.*—The use of the double comma following the name of a subscriber of articles of association of a gravel road company, and under a certain named county and state designated by a heading as a place of residence, sufficiently indicates the place of residence of the subscriber to be that county and state.

SAME.—*Juror.*—Stockholders and directors of one gravel road company are

competent jurors to try issues between another gravel road and third parties.

SAME.—It is not error for the court to overrule an objection to the competency of a juror based entirely upon the mere supposition and presumption by the juror of the existence of facts which might render him incompetent.

SAME.—*Evidence.*—Oral testimony may be given as to what was done to organize a gravel road company, but not to prove the contents of the articles of association.

SAME.—*Solvency of Subscribers.*—Under the statute for the incorporation of gravel road companies (1 G. & H. 474), the solvency or insolvency of the subscribers to the capital stock of the company is immaterial to affect the legality of the corporation.

PRACTICE.—*Appeal.*—*Objections to Evidence.*—The ground of an objection to evidence must be stated in the court below, and shown by bill of exceptions to have been so stated, or the objection will not be noticed on appeal.

EVIDENCE. —*Conversation.*—When a conversation is given in evidence, the opposing party is entitled to have all that was then said in relation to the same matter given in evidence; but where a conversation about a given matter is introduced in evidence, the door is not thereby opened for the introduction of what was said in relation to a different matter, although in the same conversation.

TURNPIKE.—*False Representations.*—*Location of Road.*—*Agent.*—The representations of a solicitor of subscriptions to the stock of a gravel road company, made before the organization of the company, concerning the location of the road, and that the stock would not have to be paid for, do not bind the company, and their falsity is no defence, as a failure of consideration or otherwise, in an action by the company on the subscription of a person to whom such representations were made.

ARREST OF JUDGMENT.—*Interest of Judge.*—The interest of a judge in a cause is not ground for a motion in arrest of judgment.

From the Howard Circuit Court.

*H. A. Brouse,* for appellant.

*C. E. Hendry,* for appellee.

WORDEN, J. — Complaint by the appellee against the appellant, as follows, viz.:

"The Wild Cat Gravel Road Company, for her amended complaint, complains of the defendant, Mathew W. Miller, and complaining says that on the 25th day of July, 1869, for the purpose of accomplishing the organization of a corporation, to be known by the corporate name of The Wild Cat Gravel

Road Company, the defendant, with others, mutually agreed to and subscribed to the articles of association of this plaintiff, a copy of which articles of association and of the subscription thereto is filed herewith and made a part hereof, and marked exhibit 'A,' and agreed to take and pay for the number of shares of the corporate stock of the plaintiff, set opposite each of their names. That the defendant, by the terms of his subscription, agreed to take and pay for five shares of the capital stock of the plaintiff, amounting, in the aggregate, to the sum of two hundred and fifty dollars, and to pay the same as soon, and in such instalments, as the board of directors of the plaintiff might order, notice of such order first having been given in orders according to law.

"And the plaintiff further avers that afterwards, to wit, on the —— day of ——, 1869, having secured a valid and solvent subscription to her capital stock, amounting to more than five hundred dollars per mile of the gravel road proposed to be constructed, for the purpose of completing said organization, a copy of said articles of association were, on the day last aforesaid, caused to be filed in the recorder's office of the recorder of Howard county, in the State of Indiana, and recorded in the proper records in said office.

"Plaintiff further avers that on the —— day of ——, 1869, the board of directors of the plaintiff ordered thirty-three and one-third per cent. of said subscriptions to the capital stock to be paid to the secretary of the plaintiff, at his office, on or before the 11th day of January, 1870; that on the —— day of ——, 1870, said board of directors ordered thirty-three and one-third per cent. more of said subscription to be paid to the secretary of the plaintiff, at his office, on or before the 15th day of October, 1870; and on the —— day of ——, 1871, said board of directors ordered an additional thirty-three and one-third per cent. of said subscription to be paid to said secretary, at his office, on or before the 1st day of April, 1871; of all of which orders so made by said board, as aforesaid, due notices were given for at least thirty days before maturity of each of said instal-

ments so ordered to be paid as aforesaid, in the Howard Tribune, a weekly newspaper printed and published in the city of Kokomo, Howard county, in the State of Indiana.

"And the plaintiff further says that, notwithstanding the making of said orders, of all of which the defendant had due notice, so given as aforesaid, he has wholly neglected, refused and declined to pay said subscription, or any part thereof; that the same, with the interest thereon from the dates of the maturity of said instalments, is now due and remains wholly unpaid. Wherefore," etc.

Demurrer to the complaint, for want of sufficient facts, overruled, and exception.

Answer, issue, trial by jury, verdict and judgment for the plaintiff, over a motion by defendant for a new trial.

The errors assigned are:

1. The overruling of the demurrer to the complaint.

2. The overruling of the motion for a new trial.

3. The overruling of a motion in arrest of judgment.

There are several objections made to the complaint, which we will consider in their order.

1. It is objected that the articles of association, signed by the defendant, did not contain any agreement to pay money to the corporation when she should become organized, or to any one else for her use; in other words, that there was no contract to pay for the stock. The amount of the capital stock of the association was fixed by the articles at twenty thousand dollars, divided into four hundred shares, of fifty dollars per share; and the defendant stipulated to take five shares. There is no express stipulation that he would pay for the shares the amount of fifty dollars per share, or any other sum; but it was clearly implied that he would pay the amount specified per share, from his agreement to take the shares. Angell & Ames Corp., 10th ed., sec. 517.

Another author says:

"Where the stock of the company is defined in its charter, and is divided into shares of a definite amount in money, a subscription for shares is justly regarded as equivalent to a

promise to pay calls, as they shall be legally made, to the amount of the shares." 1 Redf. Railw., 5th ed., 175.

Here the amount of the capital stock was fixed by the articles of association, and the number of shares, as well as the amount of each share. This, for the purposes of this question, is the same as if the same thing had been done by special charter. The subscription inured to the benefit of the corporation, when its organization was afterwards perfected by filing a copy of its articles of association in the proper recorder's office. *Heaston* v. *The Cincinnati, etc., R. R. Co.*, 16 Ind. 275; *The Indianapolis Furnace and Mining Co.* v. *Herkimer*, 46 Ind. 142.

There is no force in the objection we have been considering.

It is objected, in the second place, that "it is not alleged in the complaint that copies of the articles of association were filed in the office of the recorder of the county through which the road is to pass, and the time when filed."

It is alleged that a copy of the articles was filed in the recorder's office in Howard county, and an inspection of the termini and course of the road, as specified in the articles, shows that it was not to run elsewhere than in that county. There was, therefore, no need of recording the articles in any other county. The time at which the articles were filed for record is not stated, except that it was in the year 1869; but this uncertainty was not ground of demurrer, in view of all the allegations of the complaint. The uncertainty might have been removed by a motion to require the time to have been stated more specifically.

It is objected, in the third place, that it is not alleged that a board of directors was elected and qualified, to order the payment of subscriptions. It is alleged that the calls were made by the board of directors of the plaintiff. The allegations in this respect were, in our opinion, sufficient. It could not be true that the calls were made by the board of directors of the plaintiff, unless a board of directors had been elected.

The next and fourth objection is, that "no names of directors are set forth in the articles of association;" and the case of *Busenback* v. *The Attica and Bethel Gravel Road Co.*, 43 Ind. 265, is cited as holding it to be necessary that the names of directors should be thus stated in the articles. The case cited does not support the position. No such question was involved in the case. The only question there was, whether it was necessary that the articles should set forth the residence of each and every subscriber thereto. In the case above cited, the case of *Eakright* v. *The Logansport, etc., Railroad Co.*, 13 Ind. 404, was referred to as deciding that the requirements of the statute must be complied with, in order to effect an organization of a corporation. The case from 13 Ind. was decided under a statute that required the articles of association to state the number and names of the directors. The law under which the plaintiff was organized makes no such requirement. 1 G. & H. 474, sec. 1. There is nothing in this objection.

It is claimed, fifthly, that the terminus of the road is not stated with sufficient certainty. There is no force in this objection. The road starts at a definitely described point, and runs specified courses and distances to the end, the whole length being eleven miles and one hundred and thirty-seven and twenty-eight hundredths rods. Thus by starting at the point indicated and following the courses and distances, the exact terminus can be ascertained. That which can thus be rendered certain is sufficiently certain. The paper containing a description and survey of the road seems to have been detached from the body of the articles of association, but it was referred to in the articles as exhibit "A," and expressly made a part of them, and recorded with them as part thereof. The paper thus became a part of the articles, as effectually as if it had been contained in the body of them.

The sixth objection made is, that the complaint does not allege, in terms, that all the steps have been taken which were necessary to bring the corporation into existence. It

alleges the entering into the articles of association, which are set out by copy as containing the contract entered into by the defendant, and they appear to contain all that is required by law. It also alleges that the necessary amount of stock has been subscribed for, and that the articles have been duly filed for record. This is all that was necessary to constitute the plaintiff a corporation. 1 G. & H. 474, sec. 1. No further allegations were necessary in this respect.

It is further objected that the complaint is bad, because it does not aver that certificates of stock were tendered to the defendant before bringing the action. No such tender was necessary. *The New Albany, etc., R. R. Co.* v. *McCormick,* 10 Ind. 499; *Heaston* v. *The Cincinnati, etc., R. R. Co.,* 16 Ind. 275; *Beaver* v. *President, etc., of Hartsville University,* 34 Ind. 245.

The appellant has referred to the case of *Summers* v. *Sleeth,* 45 Ind. 598, as sustaining his position. That case, however, is not in point. In that case, it was expressly stipulated in the contract sued upon that, on the payment of the money, the company was to issue to the defendant the amount of the stock. The payment of the money and the isssuing to the defendant of the stock (which we suppose means the issuing of a certificate for the stock) were held to be concurrent acts; and it was accordingly held that the action could not be maintained for the money without having tendered the stock. There is in the case before us no such stipulation.

The payment by the defendant of his subscription would entitle him to the stock. The certificate is merely the evidence of title, which can be demanded and obtained by the owner of stock whenever he may desire. See *The New Albany, etc., R. R. Co.* v. *McCormick, supra.*

It is also claimed that the directors of the company should have filed a bond before they proceeded to collect the money, and for this proposition we are referred to 3 Ind. Stat. 540, sec. 7. The statute cited has reference to the receipt by the company from the county treasurer of money

collected on assessments of benefits.    It has no reference to collections of stock subscriptions.

Finally, it is objected that the articles of association do not show the residence of the subscribers thereto.    The articles are subscribed as follows:

"Subscriber's Names.     Place of Residence.     No. of shares
taken.
"N. R. Linsday,    Howard county, Indiana  .   .   .   10.
"Mathew W. Miller,     „        „        „   .   .   .   .   5."

There are other names between Linsday's and Miller's, and also others following Miller's, but the residence of each person is indicated by the double comma, as above shown, to be in the county named.    This we think is sufficient. The double commas, as above shown, are, by common usage, equivalent to the repetition of the words "Howard county, Indiana."    This is sanctioned, not only by common usage, but by standard literary authority.    Quackenbos' Comsition and Rhetoric, 152.

We have thus noticed all the objections made to the complaint, unless, in their multiplicity, we have overlooked some as they lie scattered through two briefs filed by the appellant.

We proceed to the other questions involved.    When the jury was about being empanelled to try the cause, it appeared that two of their number, viz., Rossetter Gray and Andrew Patterson, were stockholders and directors in other gravel road corporations in that county.    Objection was made to the competency of the jurors by the appellant on this ground, but the objection was overruled.    The objection was without foundation.    As well might it be claimed that a farmer is not a competent juror in a case involving questions of interest to farmers, or a merchant in a case involving questions of interest to merchants, and so on through the various avocations of life.

Clark A. Boggs, one of the jurors, being interrogated as to his competency, said:

"I am a stockholder in the Greentown and Kokomo

Gravel Road. My father resides in Kokomo, and owns real estate in said city, which I suppose has been assessed benefits in favor of all these roads, and in favor of the plaintiff's road. I presume if he had been assessed he has paid his assessment." On this statement the appellant objected to the juror, but the objection was overruled. This juror was a stockholder in another road, but this, as we have seen, did not render him incompetent. His father owned property in Kokomo, which he supposed had been assessed benefits in favor of the plaintiff. This, however, was a mere supposition. But, assuming that the juror's father had been thus assessed, he did not become a stockholder in the corporation, unless he had paid the assessment. It did not appear that he had paid the assessment. The juror said he presumed his father had paid the assessment, if he had been assessed. He did not profess to know anything about it. Assuming, without deciding, that if the juror's father had been assessed for benefits in consequence of the plaintiff's road, and had paid the assessment, the juror would have been incompetent, still the action of the court was not erroneous, because there was no legitimate proof either of the assessment or payment. It all rested on the mere supposition and presumption of the juror, which are not sufficient to establish any disputed fact.

On the trial, the plaintiff asked a witness, Isaac Houck, as follows:

"State what steps, if any, were taken to get up an organization of the company."

To this question the defendant objected, for the reason "that the question was too vague and indefinite, and solicited, if anything, evidence of a secondary character." Objection overruled. There was no error in this ruling. What the witness was asked to state was neither vague nor indefinite, nor does it seem to us to call out parol evidence of the contents of the articles of association.

The following question was asked the witness:

"Did you at any time, on behalf of the company, file articles of association with the recorder of Howard county?"

The witness answered that he did, and paid six dollars for recording them. This question and answer were objected to, but the objection was overruled. We see no objection to the question and answer, except, perhaps, that the question was leading. It is in the discretion of the courts below to sometimes allow leading questions to be put. This court will not reverse a judgment, because leading questions have been put, unless it plainly appears that the discretion of the court below has been abused. That does not appear in this case. We think it was competent to prove by parol the fact that the articles of association had been filed in the recorder's office.

On the trial, the plaintiff offered some evidence as to the solvency of the subscribers for stock at the time the articles were filed, and the defendant, at the proper time, offered to prove "that a considerable portion of the subscription to the capital stock of said company was, at the time above referred to, insolvent." This evidence was rejected, the court remarking "that it was not necessary for the plaintiff to allege and prove the solvency of the subscribers to the capital stock of the company."

The action of the court, in this respect, was right. The solvency or insolvency of the subscribers for stock is not made a question in the statute providing for the organization of such corporations. 1 G. & H. 474, sec. 1.

The statute enacts, that "whenever the stock subscribed amounts to the sum of five hundred dollars per mile of the proposed road, copies of the articles of association shall be filed in the office of the recorder of each county through which the road is to pass, and shall from that time be a corporation, known by the name assumed in [its] articles of association."

There could be no other purpose, in offering the evidence rejected, than to show that the plaintiff had not become a legal corporation. The evidence did not tend to show that.

The court was right in stating that the plaintiff was not bound to allege or prove the solvency of the subscribers. Although the plaintiff had offered evidence on the point, the court did not err in rejecting that offered by the defendant, because it went to an immaterial matter.

After examining a witness as to the loss of the original articles of association, the plaintiff offered in evidence what was claimed to be a copy thereof, certified to by the recorder of Howard county. This was objected to by the defendant, but admitted. The bill of exceptions does not show that any ground of the objection was stated or in any way pointed out. This point, therefore, need not be further noticed.

The bill of exceptions shows that the plaintiff called Isaac Houck as a witness, and proved by him a conversation between himself and the defendant, at the time the defendant subscribed for the stock. Afterwards, at the proper time, the defendant was sworn as a witness, and was asked by his counsel to state what representation was made by Houck, if any, in the conversation above mentioned, in reference to the location of the road. This evidence was objected to by the plaintiff, and the objection sustained.

We cannot say that this was error. It does not appear that the location of the road was any part of the subject of the conversation between the witness and the defendant, which had been given in evidence. For aught that appears, the location of the road was a matter entirely foreign thereto. When a conversation is given in evidence, the party is entitled to have all that was then said in relation to the same matter given in evidence. But where a conversation about a given matter is introduced in evidence, the door is not thereby opened for the introduction of what was said in relation to a different matter, although it was said in the same conversation. 1 Greenl. Ev., sec. 201, and note.

Viewing the evidence offered as unconnected with the conversation previously shown, we do not see that it was in any way material. It does not appear that the defendant was

injured by its rejection, it not being shown what it was proposed to prove that Houck said.

In the general bill of exceptions, setting out the evidence, it is shown that the defendant, when testifying as a witness, " offered to prove that at the time Houck came to him, Miller, to get him to subscribe, he told Miller where the road was to be located, or would be located, and that the road was not located where Houck represented it would be; and that he told him he would be benefited by the road, that he would be assessed for benefits, and that he might just as well take stock to the amount that he would be assessed, and that if he did take stock, he would not have the subscription to pay."

This evidence, on the objection of the plaintiff, was rejected. This ruling was right. When the subscription was made, the company was not organized, and Houck could not bind the company by any representation that he could make as to where the road would be located. If the road was then already located, there is nothing in the case showing that the defendant had not the means of knowing the fact, and of ascertaining its exact location. He had no right to rely upon Houck's statement as to where it would be located.

The statement of Houck that, if the defendant subscribed for stock, he would not have the subscription to pay, assuming that he made such statement, could not have imposed upon the credulity of the most unsuspecting.

The plaintiff offered in evidence portions of the books of the company, for the purpose of showing the election of directors and the making of calls, but the defendant objected, and the objection was overruled. We do not find that any ground for this objection was pointed out.

It is objected that the charges given by the court were erroneous. This opinion has already extended to an unusual length, owing to the numerous points made, and we will not extend it further by setting out the charges. We think they

were substantially correct. The evidence sustains the verdict.

It is claimed, as we understand the brief of counsel for the appellant, that as the road was not located where he was assured it would be, the consideration of his subscription has failed, and he is not liable. This is, confounding motive with consideration. The motive of the defendant in subscribing may have been to secure a road where he supposed this was to be located. The consideration of his subscription was the stock to which the payment would entitle him. There has been no failure of consideration.

The motion in arrest of judgment was based upon the ground that the complaint was insufficient, and that the judge was interested as a stockholder in the road.

There was nothing in the ground first mentioned. The other formed no ground for a motion in arrest. If the judge was interested, proper steps might have been taken to secure a trial before another judge. 2 G. & H. 9, sec. 1; 2 G. & H. 154, sec. 207.

The judgment below is affirmed, with costs and ten per cent. damages.